IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

SHEENA HUNT, Individually and
as the Administratrix of the
Estate of RUSSELL AARON HUNT,
Deceased,

        Plaintiff,

v.                      CIVIL ACTION NO. 1:13-00433

BROOKS RUN MINING COMPANY, LLC,
a Limited Liability Company,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion for summary judgment. (Doc. # 67).  Plaintiff has filed a response in opposition to defendant's motion and the motion is ripe for the court's review.  For reasons expressed more fully below, defendant's motion is GRANTED.

## Background

The basis of this deliberate intent action is a job-related accident which occurred on March 24, 2009.  On that day, Russell Aaron Hunt was employed by Brooks Run Mining Company, LLC ("Brooks Run") as a roof bolter.  Hunt was operating a J.H. Fletcher Roof Ranger II roof bolting machine at the War Branch No. I underground mine when a short shank metal wrench came out of the drill chuck and struck him in the head.  After his accident, Hunt was transported from the War Branch mine to the Welch Community Hospital around 5:27 P.M. and released from the

hospital at 7:30 P.M.  Before he was released, Hunt had a CT scan
of his head which showed no fracture and was found to be normal.
Hunt returned to work the next day and continued to work as a
roof bolter operator for Brooks Run until he was found dead in
his bed on December 7, 2010.  After an autopsy, the Medical
Examiner for the State of West Virginia concluded that Hunt "died
as a result of a seizure while sleeping; in the setting of a
traumatic seizure disorder following a remote head injury at work
while employed as a professional coal miner."  Exhibit 1 to
Plaintiff's Memorandum in Opposition to Summary Judgement
(hereinafter "Plaintiff's Memo") at 7.

On or about December 7, 2012, Sheena Hunt, as
Administratrix of Hunt's estate, filed this deliberate intent
lawsuit in the Circuit Court of McDowell County, West Virginia
against defendant Brooks Run.  On January 9, 2013, Brooks Run
removed the case to this court on the basis of diversity of
citizenship.  The instant motion for summary judgment followed.
Brooks Run contends that plaintiff cannot satisfy the elements to
maintain a deliberate intent lawsuit.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, show that there is
> no genuine issue as to any material fact

> and that the moving party is entitled to
> a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at 322.  If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of
> evidence in support of the plaintiff's
> position will be insufficient; there
> must be evidence on which the jury could
> reasonably find for the plaintiff.  The
> judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could
> find, by a preponderance of the
> evidence, that the plaintiff is entitled
> to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

3

## Analysis

The West Virginia Workers' Compensation system "is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee." W. Va. Code § 23-4-2(d)(1).  The employer's immunity from tort liability "may be lost only if the employer or person against whom liability is asserted acted with 'deliberate intention.'" W. Va. Code § 23-4-2(d)(2).  Under the deliberate intention exception, an employee can recover excess damages over the amount received under the workers' compensation scheme.  Mayles v. Shoney's, Inc., 405 S.E.2d 15, 18 (W. Va. 1990).

To prove deliberate intent, a plaintiff must satisfy all of the following five elements:[1]

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

---

[1]  Alternatively, deliberate intention is satisfied if "[i]t is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee."  W. Va. Code § 23-4-2(d)(2)(i).  However, plaintiff does not allege any set of facts that would satisfy this exception.

4

(C)  That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working conditions; and

(E) That the employee exposed suffered serious compensable injury or compensable death . . . whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(ii)(A)-(E).  The deliberate intent

statute requires a court to grant summary judgment if:

consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist. . . .

W. Va. Code § 23-4-2(d)(2)(iii)(B).

In its motion for summary judgment, defendant attacked

plaintiff's ability to prove deliberate intent on several fronts.

This court, however, limits its discussion to the third element:
whether plaintiff can show that the alleged specific unsafe
working condition violated either 1) "a state or federal safety
statute, rule or regulation, whether cited or not," or 2) "a
commonly accepted and well-known safety standard within the
industry or business of the employer."  W. Va. Code § 23-4-
2(d)(2)(ii)(C).  The law or standard must, however, be
"specifically applicable to the particular work and working
condition involved, as contrasted with a statute, rule,
regulation or standard generally requiring safe workplaces,
equipment or working conditions."  <u>Id.</u>  In the present case,
plaintiff alleges that the specific unsafe working condition in
question was the use of "hands on"[2] roof bolting tools.
Plaintiff's Memo at 4.  Plaintiff alleges that Brooks Run's use
thereof violated both a federal safety regulation as well as a
commonly accepted and well-known safety standard within the
industry.

     A.  *30 C.F.R. § 75.1725(a)*

     As to the safety regulation allegedly violated, plaintiff
contends that the continued use of "hands on" roof bolting tools
violated 30 C.F.R. § 75.1725(a).  That regulation, related to
coal mine safety and health, states: "Mobile and stationary

---

    [2] According to plaintiff, "short shank" wrenches are also
referred to as "hands on" while "long shank" wrenches are "hands
off."  Plaintiff's Memo at 5.

machinery and equipment shall be maintained in safe operating
condition and machinery or equipment in unsafe condition shall be
removed from service immediately." 30 C.F.R. § 75.1725(a).

In another deliberate intent case, Judge Copenhaver
specifically rejected 30 C.F.R. § 75.1725(a) as a basis for
establishing the third element of a claim under W. Va. Code § 23-
2-4(d)(2)(ii)(C). <u>Baisden v. Omega Coal Co., LLC</u>, Civil Action
No. 2:11-079, 2012 WL 259949, *12 (S.D.W. Va. Jan. 27, 2012). In
<u>Baisden</u>, the court found that 30 C.F.R 75.1725(a)

> in contrast to a regulation "specifically
> applicable to the particular work and working
> condition involved," constitutes a "regulation .
> . . generally requiring safe workplaces,
> equipment or working conditions," and thus falls
> outside the scope of § 23-4-2(d)(2)(ii)(C). <u>Id.</u>
> § 23-4-2(d)(2)(ii)(C) (emphasis added).
> Regarding the purpose of the "specifically
> applicable" requirement, Judge Haden has
> succinctly observed: "To put the employer on
> notice, and to evidence its egregious conduct,
> the statute or standard must <u>specifically</u> address
> the unsafe working condition in question." <u>Greene
> v. Carolina Freight Carriers</u>, 663 F. Supp. 112,
> 115 (S.D.W. Va.1987) (emphasis in original).
> Section 75.1725 is no more than a regulation
> "generally requiring" that underground mining
> equipment be maintained in safe operating
> condition. It is of no aid to the plaintiffs
> here.

<u>Id.</u> The court agrees with Judge Copenhaver that 30 C.F.R
75.1725(a) is not a regulation "specifically applicable to the
particular work and working condition involved." <u>See also</u>
<u>Bennett v. The Kroger Co.</u>, 155 F.3d 557, 1998 WL 398823, *2 (4th
Cir. Jun. 15, 1998) (finding general safety regulations

applicable to "all permanent places of employment" were
insufficient to satisfy third element of deliberate intent
action); Brown v. Appalachian Mining, Inc., 141 F.3d 1157, 1998
WL 200317, *4 (4th Cir. Apr. 27, 1998) (finding regulation
requiring that machinery and equipment "be maintained in safe
operating condition and machinery or equipment in unsafe
condition shall be removed from service immediately" was not
sufficient to satisfy third element of deliberate intent claim
because it is "exactly the kind of general safety provision that
the statute itself declares insufficient"); Coe v. Outback
Steakhouse of Florida, LLC, Civil Action No. 1:11CV113, 2013 WL
140107, *8 (N.D.W. Va. Jan. 10, 2013) (finding that federal
regulations could not support deliberate intent claim because
they expressed "generalized goals" of safety and cleanliness not
specific to particular work and working condition involved);
Bowden v. Frito-Lay, Inc., Civil Action No. 5:09-cv-00914, 2010
WL 3835222, *8 (S.D.W. Va. Sept. 28, 2010)(holding regulation
imposing "general safety requirement upon employers, with no
specific requirements or duties" failed to establish third prong
of deliberate intent statute); Greene v. Carolina Freight
Carriers, 663 F. Supp. 112, 115 (S.D.W. Va. 1987) (finding
regulation "generally" requiring "safe equipment" to be
insufficient to satisfy deliberate intent statute).

For these reasons, plaintiff cannot satisfy the third element of the deliberate intent statute by relying on 30 C.F.R. § 75.1725(a).

B.   *Industry Standard*

Plaintiff also contends that Brooks Run violated a "well-known and commonly accepted underground mining industry standard relevant to the use of `hands off' roof bolter tools." Plaintiff's Memo at 14.  As support for its argument that an industry-wide standard was violated, plaintiff points to certain manuals and safety bulletins from J.H. Fletcher, the manufacturer of the roof bolter Hunt was using at the time of his accident. However, contrary to plaintiff's assertions, this does not suffice to establish a industry standard.

For example, J.H. Fletcher Information Bulletin No. 116, which plaintiff says "proves the existence of a well-known and commonly accepted underground mining industry standard relevant to the use of `hands off' roof bolter tools," Plaintiff's Memo at 14, states that "[f]or decades, J.H. Fletcher & Co. ("Fletcher") has notified machine owners and operators regarding the danger involved in holding onto or grabbing/reaching for rotating drill tools . . . or bolts when operating a roof bolting machine. There is NO circumstance when it is safe or proper for an operator to hold onto or to touch a rotating drill tool or bolt." Putting aside the fact that this bulletin is dated June 2010,

over a year after Hunt's accident, it falls far short of
establishing an industry standard.  At best, it establishes a
Fletcher standard.  Notwithstanding plaintiff's assertion to the
contrary, nowhere does that document suggest that it embodies an
industry-wide consensus.[3]  See Hoschar v. Appalachian Power Co.,
906 F. Supp. 2d 560, 569-70 (S.D.W. Va. 2012) (evidence that a
NIOSH publication had been adopted by a few unidentified
organizations was not sufficient to establish a commonly accepted
industry standard).

Regarding the tough road a plaintiff faces in
demonstrating the existence of a "well-known" and "commonly
accepted" industry standard, the United States Court of Appeals
for the Fourth Circuit wrote:

> The amended statute thus protects against
> flagrant violations of national and state safety
> statutes, rules, and regulations.  This, we
> think, is an indication of the requisite breadth
> of the nongovernmental safety standards also
> sought to be protected by the lawmakers.  The
> legislature has recognized that many industries
> or businesses observe safety standards whether or
> not they are the subject of governmental
> regulation.  Subsection (C) takes this into
> account and permits relief for the violations of

---

[3] Plaintiff and George Smith, plaintiff's expert, make much
ado of the bulletin's statement that "[f]or decades, . . .
Fletcher has notified machine owners and operators regarding the
danger in holding onto or grabbing/reaching for rotating drill
tools. . . ."  However, the critical issue herein is not what one
manufacturer has been doing "for decades" but, rather, what the
"well-known and commonly accepted" standards of the industry
suggest should be done.  Plaintiff has offered no evidence on
this point.

> such of these safety standards as are "commonly
> accepted" and "well known."
>
> It would be rare that a "commonly accepted
> and well-known" safety standard could be
> established by showing that it exists in only one
> facility.  Occupational safety standards may vary
> across, or perhaps within, geographical regions
> of even the same industry.  Before such a
> standard could be fairly characterized as
> "commonly accepted and well-known" there must be
> at least some evidence that an equal or similar
> standard was in place or recognized by a business
> or industrial entity conducting the same or
> similar activities as the defendant.  Without
> such evidence, there seldom will be a jury
> question under subsection (C).

Handley v. Union Carbide Corp., 804 F.2d 265, 273 (4th Cir.

1986).

As to plaintiff's argument that Mr. Smith's testimony can

establish the use of short shank wrenches was in violation of a

commonly-accepted and well-known safety standard within the mining

industry, that testimony must be supplemented by "competent

evidence of written standards or guidelines which reflect a

consensus safety standard in the industry or business."  W. Va.

Code § 23-4-2(d)(2)(ii)(C).  Here, plaintiff's expert has not

identified any specific well-known safety standard within the

mining industry.  Furthermore, Mr. Smith has not pointed to any

other mining facility that employs a specific standard embodying

the cause of Mr. Hunt's injury.  See Bennett v. The Kroger Co.,

155 F.3d 557, 1998 WL 398823, *3 (4th Cir. Jun. 15, 1998)

(affirming district court finding that expert testimony was

11

insufficient to establish third prong of deliberate intent claim where "expert did not set forth specific, well-known standards").

Plaintiff also argues that Brooks Run violated its own internal safety rules when it failed to provide long shank/hands off tools.[4] Assuming for the purposes of this motion, that Brooks Run violated its own internal regulations, that is insufficient to establish that a "commonly accepted" and "well-known safety standard" was violated.  See Handley v. Union Carbide Corp., 804 F.2d 265, 272 (4th Cir. 1986) (finding that even if employer violated procedures described in its internal safety data sheets it is not enough to show that "commonly accepted" and "well-known safety standard" was violated).  As the Handley court noted:

> We agree with the trial court that there was no
> evidence upon which the jury could find that the
> safety rules at issue here extended anywhere
> beyond Carbide's own facilities.  Internal safety
> data of a single company might well be probative
> in establishing existing industry standards in
> some areas, but as the district court noted, the
> Handleys presented no evidence of Carbide's size
> in relation to the rest of the chemical industry.

---

[4] In its Memorandum in Opposition to Summary Judgment, plaintiff states: "Brooks Run was bound by its own safety rules that prohibited the use of short shank, `hands on' drilling tools and equipment. . . .  Brooks Run was required by West Virginia mining law to abide by its own rules, which in this case specifically included `hands off' roof bolt drilling.  The Defendant violated its own rules by providing only `hands on' tools."  Plaintiff's Memo at 15.  The only citation to the record is to the two expert reports of George Smith.  However, the only written "safety rule" referred to in Smith's initial report is one that was adopted the day after Hunt's workplace accident. See Doc. No. 74, Exhibit 4.

> There was also no evidence of the effects
> Carbide's internal safety rules had on the rest
> of the industry, and the record is equally bare
> of evidence from which the jury could infer the
> weight Carbide's policies carried within the
> industry.

Id. at 273-74.

To the extent that plaintiff is arguing an industry standard is established by the testimony of Jason Cline and Matthew Cline, Hunt's former coworkers, that argument fails. The deposition testimony cited by plaintiff falls short of establishing that there was a specific safety rule of Brooks Run that was being violated prior to Hunt's accident. In any event, such evidence is not sufficient to establish industry practice. Brown v. Appalachian Mining, Inc., 141 F.3d 1157, 1998 WL 200317, *4 (4th Cir. Apr. 27, 1998) ("The only evidence Brown offered as to the third element was his own testimony, and that of [coworker], that use of a pizza pan instead of the endloader's bucket is not a generally accepted industry practice. We agree with the district court's conclusion that this evidence was not competent to meet the high degree of specificity required by the statute."); Coe v. Outback Steakhouse of Florida, LLC, Civil Action No. 1:11CV113, 2013 W: 140107, *9 (N.D.W. Va. Jan. 10, 2013) (rejecting plaintiff's proposed "commonly accepted industry standard" rooted in "common sense" where it was "unsupported by any competent corroborating evidence").

As shown above, plaintiff has failed to carry her burden of showing a "well-known and commonly accepted" safety standard was violated in this case.

C.   *C.S.R. 36-10-5 and 36-10-15*

More than three months after the motion for summary judgment was filed, on December 20, 2013, plaintiff filed a motion to amend her response in opposition to summary judgment, pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. (Doc. No. 97).  Plaintiff asserted "that additional regulatory mandates apply" and directed the court to "36-10-5 and 36-10-15 of the rules and regulations enacted by the West Virginia Officer of Miner's Health Safety and Training" as a basis for satisfying the third element of the deliberate intent statute.  Plaintiff's Motion to Amend at 2.  Defendant vigorously opposes the motion to amend.

As to the merits of allowing amendment, it is clear that Federal Rule of Civil Procedure 15 is not the proper vehicle for what plaintiff seeks to do as Rule 15 speaks only to the amendment of "pleadings."  A motion for summary judgment (or a response thereto) is not a pleading.  See Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1475 ("Rule 15(a) specifically provides that a party may amend a `pleading.'  That term must be interpreted in conjunction with Rule 7(a), which enumerates the pleadings permitted in federal practice as follows:  a complaint, an answer to the complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party

14

complaint, and, pursuant to court order, a reply to an answer. Rule 15(a) applies to each of these pleadings.  Under a literal application of Rule 15(a), therefore, motions are not `pleadings' and the amendment of a motion will not be permitted. . . ."); Cooley v. Marshal, No. 2:09-cv-00559-RLH-GWF, 2011 WL 3240453, *4 (D. Nev. July 28, 2011) ("However, Rule 15 provides a mechanism to amend a pleading, and an opposition to a motion is not a pleading.") (emphasis in original); Hainey v. Sirmons, No. Civ.-07-205-C, 2007 WL 2769628, *1 (W.D. Okla. Sept. 18, 2007) ("But a motion for dismissal or summary judgment is not a `pleading.'").

     Another possible basis for allowing plaintiff's amended response is Federal Rule of Civil Procedure 6(b)(1)(B) which provides that when an act must be done within a specified time, a court may, for good cause, extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect."  Plaintiff argues that Rule 6(b) is inapplicable because she "is not seeking to extend her due date but, rather, to amend her original timely filed Response." Plaintiff's Reply Memo at 3 n.1.  The court is inclined to agree with plaintiff on this point because, as she insists, she did not fail to act.

     The court believes that plaintiff's request is more properly considered under Federal Rule of Civil Procedure 16(b)(4) which governs amendments to the court's scheduling order.  That rule holds that a scheduling order may only be modified "for good cause and with the judge's consent." Fed. R.

Civ. P. 16(b)(4).  Of the standard for ascertaining if good cause

exists, our appeals court has stated:

> "Good cause" requires "the party seeking relief
> [to] show that the deadlines cannot reasonably be
> met despite the party's diligence," and whatever
> other factors are also considered, "the
> good-cause standard will not be satisfied if the
> [district] court concludes that the party seeking
> relief (or that party's attorney) has not acted
> diligently in compliance with the schedule."  See
> 6A Charles Alan Wright, Arthur R. Miller, and
> Mary Kay Kane, Federal Practice and Procedure
> Civ.3d § 1522.2 (3d ed. 2010) (collecting cases);
> see also 3 Moore's Federal Practice § 15.14[1]
> [b], at 16–72 (Matthew Bender 3d ed. 2010)
> ("[A]lthough undoubtedly there are differences of
> views among district judges about how compelling
> a showing must be to justify extending the
> deadlines set in scheduling orders, it seems
> clear that the factor on which courts are most
> likely to focus when making this determination is
> the relative diligence of the lawyer or lawyers
> who seek the change.").

Cook v. Howard, 484 F. App'x 805, *815 (4th Cir. 2012).  "While

other factors warrant consideration, including danger of

prejudice to the non-moving party, the length of delay and its

potential impact on the judicial proceedings, the reason for the

delay, and whether the movant acted in good faith, diligence is

the hallmark of the Rule 16(b)(4) good cause standard."  Paice,

LLC v. Hyundai Motor Co., Civil No. WDQ–12–0499, 2014 WL 3385300,

*1 (D. Md. July 8, 2014).

> As reasons for seeking amendment, plaintiff contends:

> While continuing to work on this matter in
> preparation for trial the Plaintiff has continued
> to research legal authorities. As outlined in an
> exhibit to this Motion the Plaintiff contends
> that additional regulatory mandates apply.
> Specifically, the Plaintiff points the Court to
> 36-10-5 and 36-10-15 of the rules and regulations

> enacted by the West Virginia Office of Miner's
> Health Safety and Training ("WVOMHST"). These
> rules and regulations are enabled with the force
> and effect of law by, among other sources, West
> Virginia Code §22A-6-4.1.

Plaintiff's Motion to Amend at 2.  The court finds that plaintiff

has not established good cause for her delay in seeking to amend

her opposition to the motion for summary judgment.

First, plaintiff's own filing demonstrates that she did

not exercise diligence in seeking to amend.  In a deliberate

intent action, a  plaintiff "must offer evidence to prove each of

the five specific statutory requirements."  Ramey v. Contractor

Enter., Inc., 225 W. Va. 424, 429 (2010).  As the West Virginia

Supreme Court of Appeals went on to explain:

> Moreover, summary judgment is statutorily
> required to further the legislative intent of
> "prompt judicial resolution of issues of
> [employer] immunity from litigation" under the
> workers' compensation system when a court finds
> "that one or more of the facts required to be
> proved by the provisions of subparagraphs (A)
> through (E) [of the deliberate intent statute] .
> . . do not exist." W.Va.Code §
> 23-4-2(d)(2)(iii)(B); see also Mumaw v. U.S.
> Silica Co., 204 W. Va. 6, 10-11, 511 S.E.2d 117,
> 121-22 (1998) (a summary judgment motion made by
> an employer in a W. Va. Code § 23-4-2(d)(2)(ii)
> action is appropriate where the nonmoving party
> has failed to make a sufficient showing on an
> essential element of the case it has the burden
> to prove).

Id.  Plaintiff has always known that, in order to prove her case

and withstand a motion for summary judgment, she would need to

show the specific unsafe working condition was a violation of a

state or federal safety statute, rule, or regulation, or of a
commonly accepted and well-known safety standard within the
industry or business of the employer.  Accordingly, plaintiff's
lack of diligence weighs strongly against granting the proposed
amendment.

Second, the court finds that defendant would be unduly
prejudiced if plaintiff is permitted to come forward with the new
regulations as a basis for her deliberate intent action.  Indeed,
plaintiff moved to supplement her opposition to the motion for
summary judgment more than three months after the motion for
summary judgment was filed.  The deadline for discovery had long
since passed, as had the deadline for filing dispositive motions.
If the proposed amendment is allowed, it is clear to the court
that discovery would have to be reopened and, at a minimum,
numerous persons would have to be redeposed.  In addition, the
court would have to reopen dispositive motions in order to allow
the parties to respond to the additional discovery.  The length
of the delay in this case, which is even more significant given
the stage at which amendment is sought, would seriously disrupt
these proceedings.

Finally, the court notes that plaintiff herself was
instrumental in setting the deadlines she has disregarded.  The
scheduling order is prepared with significant input from the
parties via their filing of a Rule 26(f) Report.  In addition,

18

plaintiff could have moved to extend the deadlines contained in the court's scheduling order before they had passed.  If she had done so, it is far more likely that any request for a continuance would have been granted.

Based on the foregoing, the court concludes that plaintiff has not shown good cause for seeking to supplement her opposition to defendant's motion for summary judgment at this juncture.  See, e.g., Northstar Marine Co. v. Huffman, Civil Action No. 13-0037-WS-C, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014) (denying motion to amend answer to add Statute of Frauds defense where defendant failed to "show why such research could not have been performed with diligence prior to the Scheduling Order deadline.  Preventable delays in exploring applicable legal principles do not satisfy the Rule 16(b)(4) standard for modifying the Scheduling Order."); Williams v. Bryan Cnty., No. CV409-107, 2009 WL 5149488, *2 (S.D. Ga. Dec. 22, 2009) (denying motion to amend complaint where plaintiff "did not research his case properly until defense counsel disclosed a defense which any lawyer, pursuing a civil rights claim, should know about before filing § 1983 case.  That is not diligence. And that ends the inquiry."); Colorado Visionary Acad. v. Medtronic, Inc., 194 F.R.D. 684, 688 (D. Colo. 2000) (denying motion to amend answer where "defendants admit that the delay in seeking amendment is the result of their failure earlier in the case to do the

research necessary to recognize the applicability of the defense they seek to add."). Accordingly, the motion to amend response is DENIED.

However, even if the court were to allow plaintiff to rely on these new state regulations to satisfy her burden under the deliberate intent statute, defendant would still be entitled to the entry of judgment in its favor. West Virginia Office of Miners' Health Safety and Training regulation, 36 CSR 10-5.10 provides:

> Roof Bolting Machines - Requirements.  Roof bolting machines used in seams forty-eight (48) inches or higher shall be equipped with a mechanical means of holding the drill steel during drilling operations, which minimizes the need for the equipment operator to handle the drill steel.

Plaintiff asserts, without citation to the record, that the roof bolter Hunt was operating on the day of his injury "did not have `mechanical means of holding the drill steel.'" Exhibit 1 to Plaintiff's Motion to Amend Response at d3.  Counsel for defendant noted at the motions hearing that there was no evidence in the record as to whether this particular roof bolter did or did not have mechanical means of holding the drill steel. Plaintiff did not argue or suggest otherwise.  Accordingly, even if 36 CSR 10-5.10 is applicable to Brooks Run, plaintiff has not shown that Brooks Run violated it.

As to the other late-disclosed regulation, 36 C.S.R. 10-15.1, it requires that "[a] supply of supplementary roof support materials and the tools and equipment necessary to install the materials shall be available at a readily accessible location on each working section or within four (4) crosscuts of each working section."  Once again, even assuming that this regulation is sufficiently specific to satisfy the deliberate intent statute, plaintiff fails to meet her burden to show that long shank/hands off tools are "necessary to install the materials."  She cites no evidence in the record to support her assertion.  For these reasons, Brooks Run is entitled to the entry of judgment in its favor.

### Conclusion

Based on the foregoing, defendant's motion for summary judgment is GRANTED.  Accordingly, a separate Judgment Order of even date herewith will be entered.  The motion to amend response is also DENIED.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 30th day of September, 2014.

ENTER:

David A. Faber
Senior United States District Judge

21